**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

UNITED STATES OF AMERICA,                        Criminal No. 05-275  DSD/AJB

            Plaintiff,

v.                                          **REPORT AND RECOMMENDATION**

(1)     JASON CARMELL METCALF, and
(2)     JONATHON JERELL METCALF,

            Defendants.


Andrew R. Winter, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

Rick E. Mattox, Esq., for defendant Jason Carmell Metcalf; and

Robert M. Paule, Esq., for defendant Jonathan Jerell Metcalf.


        This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on September 23, 2005, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The Court issued separate Orders on Motions dated September 27, 2005, reserving defendants' motions to suppress statements and search and seizure evidence for submission to the District Court on report and recommendation.

        Based upon the file and documents contained therein, along with an exhibit received at hearing, the Magistrate Judge makes the following:

**Findings**

        Co-defendants in this matter, Jason Carmell Metcalf and Jonathon Jerell Metcalf are

identical twin brothers.  Both defendants have been charged in a one-count indictment which alleges the offense of conspiracy to distribute and possess with intent to distribute cocaine base.  In July 2005, Minneapolis Police Officer Kurt Radke received information from a confidential reliable informant who identified Jason Metcalf and Jonathon Metcalf as persons selling narcotics.  Based upon the informant's reports Officer Radke set up successive controlled drug buys which took place on July 22, 2005, and July 25, 2005.  On each occasion the informant purchased drugs from Jason Metcalf after making arrangements by monitored cell phone calls to Jason Metcalf.  A third controlled drug buy was arranged to take place on July 26, 2005, again through a monitored direct call from the informant to Jason Metcalf.  The informant was provided with pre-recorded buy funds, and he told Jason Metcalf that he wanted to purchase two ounces of crack cocaine.  Jason Metcalf told the informant that he needed to go pick up the drugs before meeting to make the transaction.  As a result of previous surveillance during which officers had observed Jason Metcalf going to an apartment building at 1324 Irving Avenue North, officers again went to that location and observed Jason Metcalf go inside.  Officers thereafter followed Jason Metcalf when he came out of the building and proceeded to the pre-determined location at Penn Ave. and Dowling for the controlled drug buy.  The surveillance was continued; an exchange of two ounces of crack cocaine for $1,700 was observed; and Jason Metcalf left the scene in a vehicle driven by Edward James Nelson.  Officers immediately met the informant and field-tested the drugs.  Upon obtaining a positive test result, officers decided to make a vehicle stop and arrest Jason Metcalf.  The vehicle occupied by the defendant was stopped at approximately 2:20 p.m. and Metcalf was arrested by uniformed officers in two squad units near Lowry and Penn Ave.  Ultimately there were four uniformed policemen and two plain clothes officers at the scene.  Jason

Metcalf identified himself to officers as Jonathon Metcalf. However, the officers were aware that Jason and Jonathon Metcalf were identical twins and were able to promptly confirm Jason Metcalf's identity based upon a neck tattoo. When confronted with his false self-identification, Jason Metcalf admitted his true name and told officers that his address was 1314 Irving Avenue, Apartment 304. Jason Metcalf and the driver, Edward Nelson, were then placed in the back of a squad car. Subsequently, a female was observed standing by the squad car, talking with Jason Metcalf while also speaking on a cell phone. An officer overheard the female saying "go get it" on the cell phone. The officers asked her who she was and why she was talking to Metcalf, but she refused to cooperate and was thereafter arrested for obstructing justice. The female's cell phone was seized and the display showed that the number 612-369-3946 was the number of the last contact. When officers asked him to identify the woman, Jason Metcalf stated that she was Jonathon Metcalf's girlfriend, and when he was asked Jonathon Metcalf's phone number, the same cell number was provided. Jason Metcalf was searched and officers seized nine bags of marijuana along with $1,712 in cash. Jason Metcalf was not given a <u>Miranda</u> warning at any time prior to his being transported to the police station for processing and detention.

   Meanwhile, officers construed the female's cell phone communication to be instructions to Jonathon Metcalf to destroy evidence, and Officer Radke therefore contacted Minneapolis Police Officer Phillip Sosnowski to instruct him to go to 1314 Irving Avenue to engage in a "knock and talk" meeting with Jonathan Metcalf and to freeze the scene in anticipation of obtaining a search warrant. Sosnowski was advised to use caution because Jonathon Metcalf was suspected on being a member of the Vice Lords gang. The officer was already en route to 1314 Irving. At the apartment building

3

Sosnowski met additional officers and all of them were wearing raid gear. They went together to the third floor of the four-story building after conferring with the building manager and learning that No. 304 was the subject apartment. The third floor contained four or five units, including Apt. No. 304. There was no answer when officers knocked on the door, so they waited in the common area of the third floor for approximately 10 minutes before Jonathan Metcalf and another man arrived. Upon inquiry by officers, Jonathon Metcalf first identified himself as "T" (for "Twin") and stated that he was going to visit someone in unit 305, then unit 302. Metcalf was asked to give his real name, to which he responded, "Jon," and then added "Jon Clark." Officers were aware that he was providing a false identification and therefore conducted a pat down of the defendant's person for safety purposes. In the course of the pat search Officer Sosnowski felt an object in the left pants pocket which he could not identify. Consequently, he reached into the pocket and removed something in cellophane packaging that appeared to be crack cocaine. Jonathon Metcalf was then arrested and handcuffed. Further search of defendant's person resulted in seizure of keys, money, and a cell phone. The time was approximately 2:45 p.m. Keys were tried in the door lock of Apt. No. 304, but the door was not opened and no entry was made at that time. Sosnowski also asked Metcalf the number for the cell phone.

      Officer Sosnowski relayed information relating to the arrest and search of Jonathon Metcalf to Officer Radke who was undertaking to obtain a Hennepin County warrant to search apartment No. 304. At approximately 4:00 p.m. a drug sniffing dog was brought to the scene. The dog made a positive hit on No. 304 and this information was likewise conveyed to Radke. Sosnowski was advised that a search warrant had been authorized, and he commenced execution of the warrant at approximately 5:00 p.m., during daylight hours. Officers knocked and announced their presence

before entering, though the warrant authorized unannounced entry. Entry was made by use of a key seized during the search of Jonathon Metcalf and no one was present in the apartment. Drugs were found in the search.

**Search Warrant.** On July 26, 2005, Hennepin County District Court Judge David M. Duffy issued a warrant to search the location described as 1314 Irving Avenue North, Apartment 304, Minneapolis, Minnesota, including any attached or detached storage shed or garages (Hearing Exh. No. 1). The search warrant identified the objects of the warrant as controlled substances, including crack and powder cocaine; drug paraphernalia; money and property traded or otherwise obtained from drug sales; drug weighing and packaging materials; documents evidencing constructive possession of controlled substances; firearms; and communications devices. The warrant was issued on the basis of probable cause contained in the Affidavit of Minneapolis Police Officer Kurt Radke, including information obtained by confidential reliable informant, controlled drug buys, dog sniff, and surveillance.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

**Jason Metcalf Statements.** Statements made by defendant Jason Metcalf to officers following his arrest were not made in response to unlawful questioning and suppression of the statements is not required. Defendant was not given the <u>Miranda</u> warning at the scene of his arrest. Nonetheless, Officer Radke's request for defendant's true name and address was for purposes of obtaining basic identification and biographical information and was lawfully requested on that ground. Even though the information may be incriminating, a response to a request for routine biographical material is not generally subject to suppression except perhaps where the request was made with the

awareness that the requested information was directly relevant to the substantive offense. United States v. Brown, 101 F.3d 1272, 1273 (8th Cir. 1996). Under the circumstances presented here the address questioning was properly conducted for purposes of confirming defendant's identity and was particularly appropriate where defendant had already falsely identified himself to officers. Subsequent statements by Jason Metcalf in which he identified a particular female as his brother's girlfriend and he provided a cell phone number were provided voluntarily and the statements are admissible for purposes of impeachment. The government does not argue that the non-Miranda statements are admissible in the case-in-chief and the Court herein makes no determination in that regard, except to find that the non-Miranda statements were not necessary to establish probable cause for issuance of the search warrant that was executed in this case.

    **Jonathon Metcalf Searches and Statement.** The initial search of the person of Jonathon Metcalf was based upon evidence that established probable cause to believe that the defendant had committed an offense, and crack cocaine wrapped in cellophane which was discovered in the defendant's pocket was lawfully seized. Probable cause for the search existed under a totality of circumstances such that officers knew that defendant's brother Jason Metcalf had been arrested and a cell phone call had been made to Jonathon Metcalf's cell from the scene of his brother's arrest; as a result of surveillance, officers had reason to suspect that drugs were being kept at Apt. No. 304 and Jonathon Metcalf's arrival at the apartment building was consistent with apparent instructions to "go get it;" and Jonathon Metcalf had given a false name to officers. United States v. Amaya, 52 F.3d 172, 174 (8th Cir. 1995). Further search of Jonathon Metcalf's person was a lawful search incident to arrest for possession of drugs. United States v. Morales, 923 F.2d 621, 626 (8th Cir. 1991). Suppression of

evidence obtained as a result of searches of the person of defendant Jonathon Metcalf is not required.

Defendant Jonathon Metcalf's statement revealing his cell phone number was not obtained in violation of defendant's constitutional rights under Miranda. The information was given by the defendant pursuant to Officer Sosnowski's customary request for basic identification and biographical information and was properly requested on that ground. Nonetheless, while the response to a request for routine biographical material that may be incriminating is not generally subject to suppression, where the request was made with the awareness that the requested information was directly relevant to the substantive offense, the questioning is subject to greater scrutiny. United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996). In this instance Officer Sosnowski was aware that the cell phone number was pertinent with regard to whether Jonathon Metcalf had been alerted to his brother's arrest. Upon reviewing the matter with greater scrutiny, however, it is clear that the same evidence could have been immediately obtained via the cell phone itself and discovery of the evidence was inevitable and imminent in any event. Under these circumstances the information was not obtained unlawfully and suppression of defendant Jonathon Metcalf's statement is not required.

**Search Warrant.** Evidence seized pursuant to a warrant to search the residence described as 1314 Irving Avenue North, Apartment 304, Minneapolis, Minnesota, including any attached or detached storage shed or garages (Hearing Exh. No. 1), was not unlawfully obtained in violation of the constitutional rights of either defendant Jason Carmell Metcalf or defendant Jonathon Jerell Metcalf. The apartment residence search warrant was issued on July 26, 2005, and was based upon sufficient probable cause as stated in the Affidavit of Minneapolis Police Officer Kurt Radke and as determined by Hennepin County District Court David M. Duffy. The warrant properly and

sufficiently identified the location of the search and the items to be seized, and the evidence submitted to establish probable cause was not unlawfully obtained.[1]  The search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant. Furthermore, the Court finds no evidence to support a contention that officers used keys seized pursuant to search of Jonathon Metcalf's person to open the door or to enter Apt. No. 304 prior to obtaining a search warrant, and therefore the Court finds no justification for suppressing evidence for any reason relating to illegal entry of the unit.  United States v. Lyons, 898 F.2d 210, 212-13 (1st Cir. 1990)(key provided an appropriate means to identify a location, and insertion of the key in the lock was not itself a search).

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Jason Carmell Metcalf's Motion to Suppress Statements, Admissions, and Answers be **denied** [Docket No. 29];

2. Defendant Jason Carmell Metcalf's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 34];

---

[1] Neither defendant in this matter has requested hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) and no evidence has been put forth to suggest that Franks hearing would be appropriate.

      3. Defendant Jason Carmell Metcalf's Motion to Challenge Arrest be **denied**  [Docket No. 35]; and

      4. Defendant Jonathon Jerell Metcalf's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied**  [Docket No. 23];

      5. Defendant Jonathon Jerell Metcalf's Motion to Suppress Statements, Admissions, and Answers be **denied**  [Docket No. 23].  This motion was ruled moot in the Magistrate Judge's Order on Motions dated September 27, 2005.

Dated:    October 14, 2005

                                                            s/ Arthur J. Boylan  
                                                            Arthur J. Boylan  
                                                            United States Magistrate Judge

      Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before October 31, 2005.

      Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.